IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ROBERT W. JOINER, )
)
    Plaintiff, ) CASE NO. 3:09-00085
) JUDGE HAYNES
v. )
)
EMBRAER AIRCRAFT MAINTENANCE )
SERVICE, INC., )
)
    Defendant. )

## MEMORANDUM

Plaintiff, Robert W. Joiner, filed this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. against Defendant Embraer Aircraft Maintenance Service, Inc. ("Embraer"). Plaintiff asserts claims for retaliation for his protected activity of complaining about a racist e-mail originating at Embraer and forwarded to him by an outside vendor.

Before the Court is Defendant's motion for summary judgment (Docket Entry No. 21), contending, in sum, that Plaintiff has not made a prima facie showing of retaliation and that Defendant had a legitimate non-discriminatory reason for Plaintiff's termination. In response, Plaintiff asserts that his proof is sufficient on his Title VII claim for retaliation and that Defendant's cited reasons for Plaintiff's termination were merely a pretext.

### A. Findings of Fact[1]

---

[1]Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for

-1-

Defendant provides aircraft maintenance, repairs, and modifications for its customers in the regional airline and executive aircraft business. (Docket Entry No. 35, Plaintiff's Responses to Defendant's Statement of Undisputed Facts, at ¶ 1). Plaintiff was a Senior Buyer in Defendant's Purchasing Department. Id. at ¶ 2. In 2006-2007, the Purchasing Department was overseen by now Chief Financial Officer Robert DePriest ("DePriest") and was managed by Purchasing Manager Cindy Warman ("Warman"). Id. At that time, the Purchasing Department was comprised of four employees designated as Buyers or Senior Buyers: Plaintiff and Kim Couvillion, who were primarily responsible for purchasing parts for the aircraft, and Shelia Jones and David Jenkins, who were primarily responsible for purchasing parts for EAMS' various shop functions. Id.

Plaintiff maintains that his job performance was above average, while Defendant contends that Plaintiff's job performance job performance was inconsistent and many times deficient. Various Project Managers complained to Warman, DePriest, and others - including Plaintiff himself - that Plaintiff was unreliable, often had a poor attitude, and gave poor customer service. Id. at ¶ 4. In March 2007, while DePriest was serving in a managerial role over the Purchasing Department due to Warman's extended absence, DePriest received several complaints from Project Managers about Plaintiff's neglect of duties, attendance, performance, and attitude. Based upon these complaints, DePriest issued to Plaintiff a written warning and admonished Plaintiff that he would be subject to termination unless he made significant and

---

directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). The Court concludes that based upon the applicable law, there are not any material factual disputes. Thus, this section constitutes finding of facts under Fed. R. Civ. P. 56(d).

immediate improvement. Id. at ¶ 5.

Almost five months before his termination, on September 26, 2007, Plaintiff received an e-mail from Donna Wheeler ("Wheeler") of Sunset Marketing, a vendor with whom Plaintiff a good relationship, which purported to be Top 10 List of reasons why there are no African-American drivers in NASCAR. Id. at ¶ 21. The e-mail had been forwarded earlier that day to Wheeler by Paul Moore, Manager of Defendant's paint hangar, and contained a "qualification" by Moore that he was not being prejudiced as he had received the e-mail from an African-American friend of his. Id. Wheeler and Plaintiff had previously exchanged "joke" e-mails, including some with lewd or offensive subject matters. Id. at ¶ 26. Later that day, Plaintiff brought the e-mail to the attention of then-Human Resources Director, Sue Watkins, requesting an apology from Wheeler and Moore. Watkins informed Plaintiff she would speak to DePriest and would follow-up with Plaintiff. Id. at ¶ 22.

Upon being informed of the matter, DePriest contacted both Wheeler and Moore, both of whom admitted that they had sent the e-mail. DePriest informed them that the e-mail violated Defendant's policies, admonished them not to send further inappropriate e-mails, and advised them to apologize to Plaintiff. Id. at ¶ 23. Wheeler apologized to Plaintiff, but it is unclear whether Moore ever did. Id. at ¶ 24. Within a few days, Watkins followed-up with Plaintiff regarding the matter and informed him that the company would conduct sensitivity training. Plaintiff never followed-up with or spoke again about the e-mail matter with either Watkins or DePriest. Id. at ¶ 25.

Prior to 2006, Defendant had one maintenance hangar ("Hangar 1") and one paint hangar. In 2006, Defendant built a second maintenance hangar ("Hangar 2") that was designed to

accommodate larger airplanes. Id. at ¶ 6. In late 2007, Defendant elected to shift personnel to Hanger 2 in order to increase efficiencies in its business. Id. at ¶¶ 7-10. Upon Plaintiff's return to work on January 7, 2008 from a vacation, DePriest and Warman advised Plaintiff that he would be relocating from his office cubicle to support Hangar 2 as part of the production control booth process. Id. at ¶ 11. Plaintiff was unhappy with this relocation and alleges that he was not provided a "pick printer" that was necessary to perform his job efficiently. Id. at ¶ 12. No other employees complained to human resources about the move to Hanger 2. Id. at ¶ 13.

Plaintiff's title, pay, benefits, and working hours did not change following the relocation of his office to Hangar 2. Plaintiff's responsibilities as a Senior Buyer also did not change in any material way as a result of his relocation to Hangar 2. Id. at ¶ 14. Although Defendant alleges that Plaintiff's employment performance did not improve after the move, Plaintiff attributes this entirely to the lack of a pick printer near his office. Id. at ¶ 17. In mid-February 2008, Mark Hale met with several Project Managers, including Gary Bevilacqua, David Gerkey and John Tankersley, regarding various issues with poor customer service that were occurring in the Hangars. During the meeting, the Project Managers raised issues regarding purchasing parts in general and with Plaintiff's job performance in particular. Id. at ¶ 18. Hale met with DePriest about the Project Managers' concerns related to Plaintiff's attitude and job performance. Based upon his prior written warning to Plaintiff and their various discussions about his poor performance, attitude, and lack of cooperation concerning the move to Hangar 2, DePriest decided improvement would not be forthcoming and terminated Plaintiff's employment on February 20, 2008, allegedly for poor job performance. Id. at ¶ 19.

-4-

Case 3:09-cv-00085   Document 67   Filed 05/27/10   Page 4 of 14 PageID #: 792

## B. Conclusions of Law

"The very reason of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment <u>sua sponte</u>, so long as the opposing party was on notice that she had to come forward with all of her evidence." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 326 (1986). Accord <u>Routman v. Automatic Data Processing, Inc.</u>, 873 F.2d 970, 971 (6th Cir. 1989).

In <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.
>
> <u>As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment</u>. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Electrical Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991) (quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrating the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989) (quoting Celotex and Rule 56(e)).

-6-

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting Liberty Lobby, 477 U.S. at 257). Moreover, the Court of Appeals explained:

> The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'

Street, 886 F.2d at 1480 (citations omitted). See also Hutt v. Gibson Fiber Glass Products, No. 89-5731 (6th Cir. September 19, 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" (quoting Liberty Lobby, 477 U.S. at 251-52)).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is 'genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party</u>.
>
> * * *
>
> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could

-7-

> return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'</u>

<u>Liberty Lobby</u>, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that:

> [I]n ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

<u>Bohn Aluminum & Brass Corp. v. Storm King Corp.</u>, 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." <u>Duchon v. Cajon Company</u>, 791 F.2d 43, 46 (6th Cir. 1986) <u>app.</u> 840 F.2d 16 (6th Cir. 1988) (unpublished opinion) (citation omitted).

The Court of Appeals further explained the District Court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establishing a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." <u>Webster's Third New International Dictionary</u> (1986).

> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) cert. denied 494 U.S. 1091 (1990).

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions

   1.   Complex cases are not necessarily inappropriate for summary judgment.

   2.   Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

   3.   The movant must meet the initial burden of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.

   4.   This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

   5.   A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'

   6.   As on federal directed verdict motions, the 'scintilla rule' applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

   7.   The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the 'old era' in evaluating the respondent's evidence. The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is implausible.

Street, 886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

Plaintiff contends that his move to Hanger 2 was an adverse employment action and that Defendant arranged this move as retaliation for his complaint about the Wheeler e-mail. Plaintiff further argues that his termination five months after his complaint about the e-mail constituted additional retaliation and that Defendant's citations to alleged poor work performance were caused by Defendant's failure to provide a pick printer. Plaintiff asserts that Defendant purposely did not provide the pick printer so that his job performance would suffer, thus providing a pretext for his termination.

-10-

Under Section 704(a) of Title VII, retaliation against an employee for exercising the employee's right under Title VII is itself a discriminatory employment practice.

> (a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings, or hearing. It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a) (1984).

Plaintiff must prove: (1) that Plaintiff engaged in activity protected by Title VII; (2) that Plaintiff's exercise of protected activity was known by the Defendant; (3) that, thereafter, the Defendant took an adverse employment action against Plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action. EEOC v. Avery Dennison Corp., 104 F.3d 858, 860 (6th Cir. 1997); Williams v. Nashville Network, 132 F.3d 1123, 1131 (6th Cir. 1997); Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000). "[A] plaintiff does not have to prove the validity of the grievance [he] was allegedly punished for lodging; 'opposition activity is protected when it is based on a mistaken good faith belief that Title VII has been violated.'" Robbins, 186 F.3d at 158 (quoting Love v. RE/MAX of America, Inc., 738 F.2d 383, 385 (10th Cir. 1984).

"To establish the causal connection required in the fourth prong, a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action." Nguyen, 229 F.3d at 563.

"A causal link can be shown by either of two methods: (1) through direct evidence; or (2) through knowledge coupled with a closeness in time that creates an inference of causation.... However, temporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence." Id. (citation omitted).

"[A]lthough no one factor is dispositive in establishing a causal connection, evidence . . . that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation." Id. at 567 ("evidence of temporal proximity alone would be sufficient to support" an inference of a causal link). Temporal proximity between the protected activity and the adverse employment action can give rise to an inference of retaliation. Nguyen, 229 F.3d at 563. See e.g., DiCarlo v. Potter, 358 F.3d 408 (6th Cir. 2004) (recommendation to terminate an employee thirteen (13) days after filing his EEOC charge was sufficient evidence of a causal connection and inference of retaliatory motive).

"[A]t the prima facie stage the burden is minimal, requiring the plaintiff to put forth some evidence to deduce a causal connection between the retaliatory action and the protected activity and requiring the court to draw reasonable inferences from that evidence, providing it is credible." Nguyen, 229 F.3d at 566 (citing EEOC v. Avery Dennison Corp., 104 F.3d at 861). "[A] court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case." Grace v. USCAR, 521 F.3d 655, 677 (6th Cir. 2008) (citing Wexler v. White's Fine Furniture, 317 F.3d 564, 574 (6th Cir. 2003)).

Once the Plaintiff has met his burden in establishing a prima facie case of retaliation, the Defendant must provide a legitimate, non-discriminatory reasons for the adverse employment

-12-

action. Barnett v. Department of Veterans Affairs, 153 F.3d 338 (6th Cir. 1998). If the Defendant is able to show legitimate, nondiscriminatory reasons for the adverse employment action, the burden of persuasion returns to the Plaintiff to demonstrate that the reasons offered by the Defendant were pretextual. Id. Here, Defendant cites Plaintiffs continuing poor job performance and attitude as justification for Plaintiff's termination.

The undisputed facts here establish that Plaintiff has not offered sufficient proof that there was a causal connection between his protected activity and any adverse employment action. First, Plaintiff's move to Hanger #2 does not constitute an adverse employment action, as an adverse employment action is a "materially adverse change in the terms or conditions of . . . employment." Kocsis v. Multi-Care Mgmt., Inc., 97 F.3d 876, 885 (6th Cir. 1996). "Under this standard, a 'materially adverse' change in employment conditions 'must be more disruptive than a mere inconvenience or an alteration of job responsibilities.'" Mitchell v. Vanderbilt University, 389 F.3d 177, 182 (6th Cir. 2004) (quoting Kocsis, 97 F.3d at 886).

"A materially adverse action in the retaliation context is not limited to those actions that affect the terms and conditions of employment, or even acts that occur in the workplace; it is sufficient to show that the action would have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Cecil v. Louisville Water Co., 301 Fed. Appx. 490, 501 (6th Cir. 2008) (quoting Burlington Northern & Santa Fe Ry. v. White, 548 U.S. 53, 68 (2006)). "The Sixth Circuit has consistently held that de minimis employment actions are not materially adverse and, thus, not actionable." Bowman v. Shawnee State Univ., 220 F.3d 456, 462 (6th Cir. 2000). Office relocations also do not constitute adverse employment decisions. Cecil, 301 Fed. Appx. at 501. See also White, 548 U.S. at 67; Michael v. Caterpillar Fin. Servs. Corp., 496 F.3d

584, 594 (6th Cir. 2007). Thus, the only adverse employment action considered here is Plaintiff's ultimate termination by the Defendant

Despite Plaintiff's bare assertions and conclusory statements, Plaintiff has not offered any evidence of a causal connection between the protected activity and the adverse employment action. The amount of time between Plaintiff's protected activity and his termination also does not support any inference of a causal connection. Thus, the Court concludes that Plaintiff has not submitted a prima facie claim of retaliation.

Assuming, arguendo, that Plaintiff has made a prima facie showing of retaliation, Plaintiff has not demonstrated that the legitimate, nondiscriminatory reasons described by the Defendant for Plaintiff's termination were pretextual. While Plaintiff asserts that Defendant purposely created the conditions that would facilitate Plaintiff's termination (by not providing a pick printer), Plaintiff's contention that this action facilitated the necessary pretext lacks evidentiary support. Plaintiff was warned about his inadequate job performance and attitude, and Defendant elected to terminate Plaintiff after they did not improve. Plaintiff has not offered any evidence to rebut Defendant's position except to blame his performance on the lack of a pick printer. Plaintiff has not shown that Defendant failed to make "a reasonably informed decision." Wright v. Murray Guard, Inc., 455 F.3d 702, 708 (6th Cir. 2006). Thus, Defendant's motion for summary judgment should be granted.

An appropriate Order is filed herewith.

ENTERED this the 26th day of May, 2010.

WILLIAM J. HAYNES, JR.
United States District Judge